UNITED STATES, Appellee,

v.

Lloyd ARTHURS, Defendant, Appellant.

No. 94–1466.

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1995.

Decided Jan. 17, 1996.

Ramon L. Garay–Medina with whom Ramon L. Garay–Medina, was on brief for appellant.

Warren Vazquez, Assistant United States Attorney, Guillermo Gil, United States Attorney, and Nelson Perez–Sosa, Assistant United States Attorney, were on brief for the United States.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, LYNCH, Circuit Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Defendant-appellant Lloyd Arthurs was convicted of possessing with the intent to distribute approximately two kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1), and importing cocaine into the customs territory of the United States from a place outside thereof, in violation of 21 U.S.C.

§ 952(a).[1] He was sentenced to sixty-three months of imprisonment, four years of supervised release, and a $100 fine. He appeals from the judgment of conviction, entered in the United States District Court for the District of Puerto Rico following a three-day jury trial.

## I. Facts

Arthurs, a twenty-three year-old citizen of Jamaica, was a crew member aboard the cruise ship, Windward. He worked two shifts, washing pots from early morning to late afternoon and cleaning cabins in the evenings.

On December 5, 1993, the Windward arrived at the port of San Juan, having traveled there from the Virgin Islands. The government's evidence, which was largely uncontested by the defense, was that the Customs Service had caught defendant with approximately two kilograms of cocaine as he was exiting the ship. Customs agents had been informed that persons aboard would attempt to smuggle narcotics into San Juan and were inspecting disembarking passengers and crew members. An agent noticed that Arthurs appeared bulky in the midsection. Upon secondary inspection, six packages of cocaine were found loosely concealed under Arthurs' clothing.

The defense's case was provided principally by defendant's own testimony. Because Arthurs raises a duress claim, *infra*, we summarize the testimony he provided in support of that claim, testimony that the government disputes. Arthurs stated that at the time of his arrest, he had been leaving the ship in order to return two videotapes to a video club where he had rented them a week earlier. The passageway of the ship led to the upper level of a pier. There, according to defendant, a stranger pulled him into a public bathroom, where another man was waiting. No one else was inside. Defendant testified that the men pushed him up against a wall and "demand[ed] I take come [sic]

some packages out to the street, and the only way could get out of the bathroom is to cooperate with them or I would be a dead man. And the gentleman was very angry, the one was in the bathroom was very angry." Two packages were placed loosely around his waist, and four were placed in his pockets. Defendant testified that the men then let him out of the bathroom, and he did not see them again.

Defendant, being "very panic," proceeded immediately to Customs and "requested search from the Customs two times." When told that he was under arrest, "I started to give [the officer] my statement and he refused, and arrested me...." A subsequent search of defendant's cabin yielded *no other drugs.*

Defendant raises two issues on appeal: 1) the district court erred in denying his request for a translator of his testimony to ensure that the Puerto Rican jury understood his English, spoken with a Jamaican accent, and 2) it erred in refusing as a matter of law to instruct the jury on a duress defense. Defendant claims that these errors deprived him of his constitutional rights to due process, adequate legal representation, a jury trial, and a fair and impartial trial.

## II. Lack of a Translator of Defendant's Testimony

Defendant asserts on appeal, and the government concedes, that he requested a translator apparently to translate his Jamaican English into a form of English more easily understood by the jury. This request does not appear on the record now before us, nor does the record show that the court denied a request of such a nature. There also is no indication in the record of a defense objection to the court's alleged refusal to appoint a translator. Several times during the trial, however, defense counsel referred to the possibility that the jury might have difficulty

---

1. The statutes read in relevant part:
   [I]t shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....
   21 U.S.C. § 841(a).

   It shall be unlawful to import into the customs territory of the United States from any place outside thereof ... any controlled substance ... or any narcotic drug [with certain exceptions inapplicable here].
   21 U.S.C. § 952(a).

understanding defendant's English.[2] On appeal defense counsel also suggests that defendant, who neither reads nor writes, did not understand some of the questions put to him when he testified.

Normally the absence of any record of defendant's request for a translator would be fatal to the claim on appeal.[3] However, the government conceded at oral argument that such a request was made in a chambers conference. We shall, therefore, consider the matter, although, as no objection to the court's refusal to grant the request appears ever to have been made, we review for plain error only. *See United States v. Olano*, 507 U.S. 725, 736–37, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993); *see also United States v. Taylor*, 54 F.3d 967, 972–973 (1st Cir.1995) (discussing "raise-or-waive" rule and exception for plain error).

The district court's refusal to provide a translator for defendant's testimony was not plain error. The district judge, who heard the defendant speak, had considerable discretion in these circumstances to determine if Arthurs' English testimony was intelligible to the jury. *Cf. Gonzalez v. United States*, 33 F.3d 1047, 1050–1051 (9th Cir. 1994); *United States v. Garcia*, 818 F.2d 136, 142 (1st Cir.1987).[4] Defendant's counsel at no time asserted on the trial record that defendant suffered from comprehension problems so severe as to deny him due process or the right to a fair and impartial trial. It appears from our own review of the record that defendant answered for the most part responsively, although he occasionally misunderstood and needed to have a question repeated. From what we can ascertain, we cannot say that his language problems were of such a magnitude as to have deprived him of a fair trial.

The absence of an objection on this ground left the district court without notice of any claim that language difficulties bothered defendant to the extent now claimed on appeal. Had the court been so notified, it could have made further inquiry and, if necessary, taken steps to deal with the alleged problem. We cannot say, on the basis of the record now before us, that the court committed any error, much less one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736, 113 S.Ct. at 1779 (citation omitted).

## III. Denial of a Jury Instruction on the Duress Defense

At the outset, the district court denied a government motion in limine to prevent defendant from introducing evidence of duress. After the close of evidence, however, the district court did not find defendant's testimony of duress sufficient to require submitting a special duress or coercion instruction to the jury, as defense counsel had requested in writing and orally during a pre-charge colloquy with the court.

Defense counsel did not thereafter object to the district court's omission of a

2. For example, defense counsel explained in opening argument, "Mr. Lloyd Arthurs is a Jamaican National, they speak English but during this trial you will realize that the [sic] their English is not every time so easily understandable." When defendant took the stand, counsel stated, "I will appreciate that all your answers try to be as clear and slow as possible.... For the members of the Jury to clearly understand your testimony." And in closing arguments, defense counsel noted that the jury may have had some difficulty understanding defendant's speech, and reiterated key aspects of his testimony.

3. Where a report of relevant proceedings below is unavailable, an appellant should seek to supplement the record on appeal pursuant to Fed. R.App.P. 10(c). Here, given the government's concession and in the interests of justice—and given our conclusion that defendant is without ultimate right to relief in any event—we discuss his contention notwithstanding his failure to have utilized this rule. Our doing so should not be taken as precedent that an appellant may, in other circumstances, ignore Fed.R.App.P. 10(c).

4. Defendant does not assert that his principal language was other than English. The Court Interpreters Act provides in relevant part that a presiding judicial officer "shall" appoint an interpreter when it determines that "[a] party (including a defendant in a criminal case) ... (A) speaks only or primarily a language other than the English language ... so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony." 28 U.S.C. § 1827(d)(1).

duress instruction from its charge before the jury retired to consider its verdict, as Rule 30 of the Federal Rules of Criminal Procedure directs.[5] Our precedent requires strict compliance with this rule:

> "As we have repeatedly held, Fed. R.Crim.P. 30 means what it says. A party may not claim error in the judge's charge to the jury unless that party 'objects' after the judge gives the charge but before the 'jury retires,' and, when objecting the party must 'stat[e] ... distinctly the matter to which that party objects and the grounds of that objection."

*United States v. O'Connor*, 28 F.3d 218, 221 (1st Cir.1994) (quoting *United States v. Wilkinson*, 926 F.2d 22, 26 (1st Cir.), *cert. denied*, 501 U.S. 1211, 111 S.Ct. 2813, 115 L.Ed.2d 985 (1991)). Rule 30 is not satisfied by counsel's pre-charge colloquy with the court or written explanation of grounds alone, nor even by a post-charge attempt to incorporate by reference earlier arguments. *See United States v. Gabriele*, 63 F.3d 61, 66 & nn. 4, 7 (1st Cir.1995); *Wilkinson*, 926 F.2d at 26–27; *United States v. Coady*, 809 F.2d 119, 123 (1st Cir.1987) ("That counsel may have discoursed upon the nature of his theory at some time prior to the giving of the charge will not excuse noncompliance with the express mandates of Rule 30."). Strict compliance with the rule "enables the trial judge intelligently to appraise the soundness of the position asserted, and if need be, correct the charge to avoid injustice." *Coady*, 809 F.2d at 123.

■ After its charge, the district court does not appear to have affirmatively invited counsel to register any objections they then had to the instructions it had just given. However, Rule 30 places the burden of compliance on the parties. *Cf. id.* Counsel should have spoken out, requesting an opportunity to register objections out of the jury's hearing. Absent a post-charge objection, we review the district court's denial of a duress instruction only for plain error. *See Olano*,

at 736–37; 113 S.Ct. at 1779; *Gabriele*, 63 F.3d at 66.

■ A duress defense has three elements: 1) an immediate threat of serious bodily injury or death, 2) a well-grounded belief that the threat will be carried out, and 3) no reasonable opportunity to escape or otherwise to frustrate the threat. *See United States v. Amparo*, 961 F.2d 288, 291 (1st Cir.), *cert. denied*, 506 U.S. 878, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992).

■ To justify a duress instruction, a defendant must produce sufficient evidence to support a finding of duress. *See Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.") (citations omitted); *Amparo*, 961 F.2d at 291; *United States v. Rodriguez*, 858 F.2d 809, 812, 814 (1st Cir.1988) (a defendant must show evidence that "fairly supports" each element of his defense, and in making that determination, "the district court is not allowed to weigh the evidence, make credibility determinations, or resolve conflicts in the proof").

■ When a predicate warranting a duress instruction has been laid, the government is saddled with the additional burden of showing beyond a reasonable doubt that a defendant's criminal acts were not the product of duress. *See Amparo*, 961 F.2d at 291. Here, the government escaped this added burden, the district court ruling that the defendant did not present sufficient evidence of any element to entitle him to submit a duress defense to the jury.

■ In reviewing the district court's determination that defendant did not meet his entry-level burden, we examine the record "most charitably to the proponent of the instruction." *Coady*, 809 F.2d at 121. So viewed, the evidence of an immediate threat of serious bodily injury or death was that

---

**5.** The rule provides: "No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto *before the jury retires* to consider its verdict, *stating distinctly* the matter to which that party objects and the grounds of the objection." Fed. R.Crim.P. 30 (emphasis supplied).

Arthurs was pulled into a public bathroom on the pier and pushed up against a wall, was threatened by two men (one of whom was "very muscular" and "very tall"), and felt something like a weapon on his back. His fear in these circumstances gave rise to his alleged well-grounded belief that the threat of serious injury or death would be carried out. His testimony regarding a lack of reasonable opportunity to escape was that no security officers were present at the time in the upper pier area. To seek refuge or assistance by returning to the ship would have required him to pass the bathroom and the men who had threatened him. Instead, defendant used the elevator next to the bathroom to proceed immediately to Customs on the lower level. Defendant testified that at Customs he requested twice to be searched and attempted to explain his situation but was not permitted to do so.

Assessing the above evidence, we conclude that the district court did not commit plain error in refusing to instruct the jury on duress. While defendant may have been under an immediate threat of serious injury in the bathroom, he testified that the men released him from there and he did not see them again. This evidence at most supports a lingering threat of future harm. *Cf. United States v. Wells,* 773 F.2d 230, 232 (8th Cir.1985) (drug deal participant's fear of future harm insufficient to show duress); W. LaFave & A. Scott, Criminal Law § 5.3(b) at 436 (1986) (reciting general rule that threatened future death or serious bodily harm is insufficient for a duress defense). The evidence of a well-grounded belief that the threat would be carried out is similarly weak, given defendant's testimony that he left the bathroom, boarded the elevator by himself, and did not see the men again or know them.

■ Notably, defendant did not present evidence sufficient to convince a reasonable juror of the lack of a reasonable opportunity to escape. In *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), the Supreme Court stated that a duress defense is unavailable "if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened

harm.'" *Id.* at 410, 100 S.Ct. at 635 (citing W. LaFave & A. Scott, Handbook on Criminal Law at 379 (1972)). Even if a return to the ship was unreasonable and security officers were unavailable on the pier, defendant might have discarded the drugs in the elevator or pulled them out from his clothing at Customs and proceeded to exit with his videos, as the district court noted during the precharge conference. The record indicates that defense counsel had opportunity to answer this concern but offered no further evidence. *Cf. United States v. Alicea,* 837 F.2d 103, 106–107 (2d Cir.), *cert. denied,* 488 U.S. 832, 109 S.Ct. 88, 102 L.Ed.2d 64 (1988) (defendants forced at airport to transport cocaine by threats, a rape, and constant surveillance failed to show a lack of reasonable opportunity to escape); *United States v. Mejia,* 720 F.2d 1378, 1382 (5th Cir.1983) (defendant who conceded importation of cocaine and failed to contact authorities to avoid the threat was not entitled to duress instruction). The failure to show any one element of duress is sufficient to justify denying a request to submit a defense theory to the jury. *See Bailey,* 444 U.S. at 416, 100 S.Ct. at 637–38.

That the evidence fell short of establishing duress is further supported by this court's decision in *Rhode Island Recreation Ctr., Inc. v. Aetna Casualty & Sur. Co.,* 177 F.2d 603 (1st Cir.1949). This civil case discussed the duress defense at length in considering an insurance policy that excluded from coverage a loss caused by an employee's fraudulent or criminal acts. The Supreme Court cited *Aetna* approvingly in *Bailey,* 444 U.S. at 410 n. 8, 100 S.Ct. at 635 n. 8, to illustrate the need for an accused to show no reasonable opportunity to avoid violating the law. *Aetna* is factually analogous to the claims in the instant case: two armed strangers ordered appellant's manager into a car, drove him to the place of business, instructed him to remove all the money from the safe and meet them shortly afterward or else "they would take care of" certain family members, and then drove away. *See Aetna,* 177 F.2d at 604. The manager did as told without seeking help from the few employees he saw or by any other means.

Applying the same elements of duress recited above, the *Aetna* court found the facts

**450**

insufficient to indicate that the manager was acting under duress or coercion. The court pointed to the vague threat of future harm, the poorly-founded fear of immediate injury, and the reasonable opportunities to avoid the threat and violation of the law while temporarily away from the strangers. *See id.* at 605–606.

In light of the above authorities, the district court's finding of insufficient evidence of duress and consequent refusal to instruct the jury on the defense was clearly not plain error, if error at all, under the heightened standard applicable in plain error review. *See Olano,* at 736–37, 113 S.Ct. at 1779.

The district court, it should further be observed, denied the government's early motion in limine to exclude evidence of duress. The jury, therefore, heard the essence of Arthurs' defense and the government's response. *Cf. Bailey,* 444 U.S. at 400, 416–417, 100 S.Ct. at 629–30, 637–38 (affirming conviction of a separately, subsequently tried defendant who was precluded from even introducing evidence of duress as his former codefendants had done). The district court also instructed the jury that the government had the burden of proving beyond a reasonable doubt defendant's specific intent to commit the crimes charged. *Cf. United States v. Sturm,* 870 F.2d 769, 777 (1st Cir.1989). Had the jury actually believed defendant's testimony that he had been threatened and involuntarily given the drugs in the bathroom, it might, even without further instruction, have entertained a reasonable doubt as to whether the element of specific intent was satisfied. Even more, had the jury believed, as defendant also testified, that he had unavailingly asked the Customs officers to search his effects, the jury would have been free to entertain a reasonable doubt as to defendant's intent to commit the charged crimes.

We conclude, in all the circumstances, that the district court's refusal to instruct on duress was not plain error.

*Affirmed.*