USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

No. 97-2352

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 FREDI ADEMAJ,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. William G. Young, U.S. District Judge]

 

 Before

 Lynch, Circuit Judge,

 Cyr, Senior Circuit Judge,

 and Lipez, Circuit Judge.

 

 John J. Barter for appellant.
 Theodore B. Heinrich, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief for appellee.

 

 March 4, 1999
 CYR, Senior Circuit Judge. Defendant Fredi Ademaj
challenges various district court rulings relating to his trial and
conviction on three counts of distributing cocaine, see 21 U.S.C.
 841(a)(1), and two counts of conspiring to distribute cocaine,
see id. 846. We affirm the district court judgment in all
respects.
 I
 BACKGROUND
 The evidence showed that Ademaj had been involved in a
wholesale cocaine distribution operation in the Boston area. 
During May 1996 the Drug Enforcement Agency ("DEA") began using a
cooperating witness, nicknamed "Bob," to investigate Stefanos
Meraklis, Ademaj's brother-in-law. During the DEA investigation,
"Bob" engaged in undercover cocaine transactions with both Meraklis
and Meraklis' cocaine supplier. Some transactions were tape-
recorded and Ademaj served as a go-between in certain transactions. 
For the most part, the recorded conversations were conducted in
Greek.
 II
 DISCUSSION
 Ademaj presents six claims, which we discuss in turn.
A. Constructive Deprivation
 of Right to Trial Counsel
 Initially, Ademaj filed a pro se motion requesting
replacement counsel three days prior to trial, arguing that since
he and his court-appointed counsel spoke different languages their
inability to communicate resulted in a constructive deprivation of
his Sixth-Amendment right to trial counsel, in that "there was no
opportunity for effective trial preparation." Cf. Strickland v.
Washington, 466 U.S. 668, 685-87 (1984).
 Thereafter, on the first day of trial, court-appointed
counsel moved for a continuance on the ground that "it was evident
that [Ademaj] did not understand the federal court procedures, as
[counsel] had previously explained to this Albanian defendant in
English . . . ." Counsel further represented to the court: 
"Unfortunately, I don't think that Mr. Ademaj has understood
everything I have indicated to him about the trial process." 
Although counsel acknowledged that an interpreter had been made
available previously, he added that initially he had thought
"Ademaj had understood certain things and now I'm not sure if he .
. . actually did." For his part, Ademaj asserted that he was not
prepared to proceed to trial because there was evidence which he
had not yet been able to obtain. Asked what further evidence he
sought, Ademaj simply responded: "[M]y evidence."
 The district court heard and rejected these motions the
day trial was scheduled to begin. Shortly thereafter, as the petit
jury entered the courtroom to begin the trial, defense counsel once
again requested a continuance, which was denied. The court then
informed Ademaj and counsel that an interpreter would be available
should they wish to confer further prior to trial.
 During jury empanelment, Ademaj indicated that he wished
to proceed without counsel. The court responded that he would be
allowed to proceed without counsel, but that replacement counsel
would not be appointed. After Ademaj advised the court that he had
no confidence in court-appointed counsel, the request for
replacement counsel was denied once again and Ademaj decided
against proceeding pro se.
 As an initial matter it is not at all clear that a
criminal defendant represented by court-appointed counsel may
assert a "constructive" denial-of-counsel claim under the Sixth
Amendment separate and apart from the conventional ineffective-
assistance-of-counsel claim. Ademaj cites no apposite authority,
nor have we found any. As a conceptual matter, moreover, such a
claim would appear redundant in the instant context, given that
ineffective assistance by court-appointed counsel would constitute
a denial of the Sixth Amendment right to counsel in the sense that
the trial itself could not be relied upon to produce a just result
in such a circumstance. See Scarpa v. Dubois, 38 F.3d 1, 8 (1st
Cir. 1994).
 At bottom, then, this constructive denial-of-counsel
claim is simply an ineffective-assistance-of-counsel claim wherein
Ademaj asks the court to presume prejudice. We decline to do so. 
Instead, we inquire whether the absence of an interpreter prior to
trial actually prejudiced Ademaj's defense. See United States v.
Cronic, 466 U.S. 648, 659 n.26 (1984) (dicta) (noting: "[a]part
from [certain limited] circumstances . . . there is generally no
basis for finding a Sixth Amendment violation unless the accused
can show how specific errors of counsel undermined the reliability
of the finding of guilt.").
 We have held that a presumption of prejudice under the
Sixth Amendment is "the exception, not the rule ÄÄ and it can be
employed only if the record reveals presumptively prejudicial
circumstances such as an outright denial of counsel, a denial of
the right to effective cross-examination, or a complete failure to
subject the prosecution's case to adversarial testing." Scarpa, 38
F.3d at 12. As we observed in Scarpa, ". . . the Court's language
in Cronic was driven by the recognition that certain types of
conduct are in general so antithetic to effective assistance ÄÄ for
example, lawyers who leave the courtroom for long stretches of time
during trial are unlikely to be stellar advocates in any matter ÄÄ
that a case-by-case analysis simply is not worth the cost of
protracted litigation." Id. at 12. By contrast, the Cronicrationale is not implicated in the present case, since Ademaj
understands and speaks considerable English and only belatedly even
alleged that pretrial communications with counsel were difficult. 
Thus, the instant claim lends itself to no brightline per se rule. 
 The capacity to converse in English, and any concomitant
need for an interpreter, represent fact-intensive inquiries
implicating such considerations as the defendant's intelligence,
education, and the length of time he has been exposed to an
English-speaking environment, as well as the relevant English-
language skills of the defendant and any foreign-language skills of
defense counsel. As we cautioned some time ago in a similar
context:
 Because the determination is likely to hinge
 upon various factors, including the complexity
 of the issues and testimony presented during
 trial and the language ability of the
 defendant's counsel, considerations of
 judicial economy would dictate that the trial
 court, coming into direct contact with the
 defendant, be granted wide discretion in
 determining whether an interpreter is
 necessary. 

United States v. Carrion, 488 F.2d 12, 14-15 (1st Cir. 1973)
(citing Perovich v. United States, 205 U.S. 86, 91 (1907)); seealso United States v. Sosa, 379 F.2d 525, 527 (7th Cir. 1967); cf.United States v. Arthurs, 73 F.3d 444, 447 (1st Cir. 1996) ("The
district judge, who heard the defendant speak, had considerable
discretion in these circumstances to determine if Arthurs' English
testimony was intelligible to the jury.").
 Furthermore, the right to an interpreter during pretrialpreparation is less than clear in the present circumstances, since
Ademaj was afforded an interpreter immediately before and
throughout the trial and only now belatedly asserts that one was
needed even earlier in pretrial consultations with court-appointed
counsel. Accordingly, we must consider whether any difficulty in
pretrial communications with court-appointed counsel resulting from
the alleged language barrier could have impinged upon Ademaj's
right to counsel during the trial preparation stage. Cf. Carrion,
488 F.2d at 14 ("the right to confront witnesses would be
meaningless if the accused could not understand their testimony,
and the effectiveness of cross-examination would be severely
hampered. The status of the right becomes less certain [where] the
defendant has some ability to understand and communicate, but
clearly has difficulty.")
 i. The Degree of Difficulty in Communicating
 The record on appeal would not support a contention that
Ademaj was totally unable to communicate with counsel at any stage
in the proceedings. More to the point, his extensive
correspondence and numerous colloquies with the trial judge in the
English language belie any claim that pretrial communications with
court-appointed counsel were so severely impeded as to deprive him
of the right to counsel at any relevant time. Furthermore,
although Ademaj raised many pretrial issues below, including claims
that he needed more time to prepare for trial and did not
understand court procedures, his complaints with counsel were
premised on the assertion that he was not being afforded a
sufficiently vigorous defense. 
 The only time Ademaj even arguably broached the instant
claim was on the first day of trial, by requesting new counsel and
a continuance. Under questioning by the district court, however,
Ademaj responded that he was not ready for trial because he did not
have certain evidence, then added through the interpreter:
 COURT INTERPRETER: [H]e's not prepared he
 said, your Honor. He's had a problem
 understanding Mr. Laymon.

 COURT: What is it that you want me to do to
 get prepared?

 COURT INTERPRETER: He wants another lawyer.

 COURT: Why do you want another lawyer?

 COURT INTERPRETER: He doesn't believe in Mr.
 Laymon. He said he has no confidence in him.

 Prior to the first day of trial, Ademaj mentioned no
language or other communication problem, either with counsel or in
regard to trial preparations generally. Moreover, in two letters
to his attorney, written in English approximately three weeks prior
to trial and made available to the district court, there was no
reference to any problem with court-appointed counsel. Finally,
the motion alleging ineffective assistance of counsel asserted that
court-appointed counsel was "substandard," but mentioned no
communication problem.
 Thus, Ademaj utterly failed to allege, let alone
demonstrate, how any language difficulties he may have encountered
impeded pretrial communications with court-appointed counsel. In
fact, the letters Ademaj wrote to counsel, which he typed himself,
are comparable in English-language fluency if not superior to
those drafted by many pro se litigants whose only language is
English. See supra note 4. Thus, there has been no plausible
demonstration that any language barrier which may have existed
worked a constructive denial of the Sixth Amendment right to
counsel. 
B. Ineffective Assistance of Counsel
 Ademaj mounts a conventional ineffective-assistance claim
as well, on the ground that court-appointed counsel failed: (i) to
communicate in an effective manner; (ii) to obtain the services of
a translator during pretrial preparation; (iii) to call
codefendants as trial witnesses; (iv) to obtain an expert to
translate the tape-recorded Greek conversations; (v) to obtain a
voice print; and (vi) otherwise failed to make adequate preparation
for trial.
 In order to prevail on an ineffective-assistance claim,
Ademaj must show that counsel's performance was so deficient that
it prejudiced his defense. See United States v. Ortiz, 146 F.3d
25, 27 (1st Cir. 1998) (citing Strickland, 466 U.S. at 687). That
is, he "must show . . . that 'counsel's errors were so serious as
to deprive the defendant of a fair trial, a trial whose result is
reliable.'" United States v. Sutherland, 929 F.2d 765, 774 (1st
Cir. 1991) (quoting Strickland, 466 U.S. at 687). In analyzing the
ineffective-assistance claim, we examine what counsel knew or
should have known at the time any tactical choices were made and
implemented. United States v. Natanel, 938 F.2d 302, 309 (1st Cir.
1991); see also United States v. Georgacarakos, 988 F.2d 1289,
1298 (1st Cir. 1993).
 It is well settled that an ineffective-assistance claim
will not be entertained on direct appeal absent a sufficiently
developed evidentiary record. See, e.g., United States v.
Lopez-Pineda, 55 F.3d 693, 697 (1st Cir. 1995); United States v.
Jadusingh, 12 F.3d 1162, 1169 (1st Cir. 1994). Instead, a
collateral proceeding under 28 U.S.C. 2255 is the appropriate
vehicle for such an ineffective-assistance claim. United States v.
Cofske, 157 F.3d 1, 2 (1st Cir. 1998); United States v.
Tuesta-Toro, 29 F.3d 771, 776 (1st Cir. 1994). Since the existing
record does not enable reliable appellate review, we decline to
consider the ineffective-assistance claim on direct appeal. 
 C. Continuance

 Following a nine-month delay resulting from five previous
continuances, on the first day of trial the district court denied
a further request for continuance to permit Ademaj to obtain new
counsel and conduct additional discovery. In response to an
inquiry by the district court as to why he was requesting new
counsel, Ademaj stated simply: "[H]e think I'm guilty. . . . He's
trying to cop me out." When the district court asked what
additional evidence he sought, Ademaj adverted vaguely to "my
evidence." See supra at p. 3.
 We accord "extraordinary deference" to trial court rulings
on "last-minute" requests for a continuance. See United States v.
Pierce, 60 F.3d 886, 891 (1st Cir. 1995), cert. denied, 518 U.S.
1033 (1996). The instant challenge is frivolous.
D. The Tape Transcripts
 At trial, the government called "Bob," two DEA agents, a
DEA drug analyst, and a Greek-language translator. The next day
Ademaj filed a handwritten motion, titled "Object My Trial,"
requesting an expert witness to translate the Greek conversations
on the tapes. The motion was denied as untimely.
 While "Bob" was on the witness stand the government
offered five tape-recorded conversations, four conducted primarily
in Greek and another in English. "Bob" prepared English
transcripts and Ademaj objected to their use. The court allowed
the jury to review the transcripts while the tapes were played or
particular witnesses were on the stand, but did not admit them into
evidence. The tape transcripts were utilized by counsel in closing
argument. At its request, the jury was allowed to use the
transcripts during its deliberations subject to a cautionary
instruction.
 Ademaj asserts that the district court erred in allowing
the transcripts to be used by counsel at trial, and the jury during
its deliberations. Further, he argues that since the court refused
to admit the transcripts into evidence because they had been
transcribed by a government witness, they should not have been used
by the jury during its deliberations.
 Authenticated transcripts may be used by the jury to
facilitate its understanding of the tape recordings themselves,
see, e.g., United States v. Rengifo, 789 F.2d 975, 980 (1st Cir.
1986) (citing cases), provided the court "makes clear that the
tapes, not the transcript, constitute evidence in the case." Id. 
Furthermore, should the defendant fail to offer either a sufficient
objection during playback of the tape, or an alternative
transcript, the district court does not abuse its discretion by
authorizing use of the government's duly authenticated transcript
during jury deliberations subject to an appropriate cautionary
instruction. United States v. Young, 105 F.3d 1, 10 (1st Cir.
1997).
 A similar situation was before us in United States v.
Font-Ramirez, 944 F.2d 42 (1st Cir. 1991), where we upheld jury use
of foreign-language transcripts prepared by a government informant:
 Where inaccuracies in the transcript combine
 with possible bias in the transcription
 process, a transcript may be excluded from
 evidence. The touchstone, however, is the
 accuracy of the transcript. Because
 Font-Ramirez did not offer an alternative
 transcript and did not point out any specific
 inaccuracies in the government's transcript,
 the district court was within its discretion
 in allowing its use. 

Id. at 48 (citations omitted) (emphasis added).
 The record reflects that though Ademaj received copies of
the government transcripts prior to trial, and objected to their
use at trial, no specific objection was made to their accuracy, nor
was an alternative transcript submitted. Moreover, the court
repeatedly instructed the jury that the transcripts were not
evidence. Finally, after the jury requested the transcripts during
its deliberations, it received an appropriate cautionary
instruction. The court did not abuse its discretion.
 E. Reasonable Doubt
 Prior to the close of evidence Ademaj submitted a
proposed jury instruction on reasonable doubt: "A charge is proved
beyond a reasonable doubt if, after you have compared and
considered all the evidence, you have in your minds an abiding
conviction, to a moral certainty, that the charge is true." The
district court responded that it would not define reasonable
doubt. During closing argument, defense counsel attempted to
define reasonable doubt in the same terms proposed in the requested
instruction. The trial judge interrupted defense counsel and
explained to the jury that the court would explain the law to the
jury.
 We have taken the position that "[m]ost efforts at
clarification [of the meaning of "reasonable doubt"] result in
further obfuscation of the concept[,]" thus "an instruction which
uses the words reasonable doubt without further definition
adequately apprises the jury of the proper burden of proof." 
United States v. Olmstead, 832 F.2d 642, 645-46 (1st Cir. 1987). 
That is not to say, however, "that the phrase can be buried as an
aside in the [jury charge]." United States v. Cassiere, 4 F.3d
1006, 1024 (1st Cir. 1993) (citing Olmstead, 832 F.2d at 646). 
Nevertheless, normally the district court is in a better position
to determine whether, and if so how, "reasonable doubt" should be
defined. Id.; see also United States v. Rodriguez-Cardona, 924
F.2d 1148, 1160 (1st Cir. 1991) ("We have emphasized in the past,
and do so again here, that reasonable doubt does not require
definition."). Under our precedents, therefore, the district court
did not abuse its discretion in refusing to define "reasonable
doubt." 
 Ademaj next argues that the district court erred in
precluding discussion of the concept of reasonable doubt when
defense counsel stated in closing argument that "[a] charge is
proved beyond a reasonable doubt if, after you have compared and
considered all the evidence, you have in your minds an abiding
conviction, to a moral certainty . . . ." At that point the court
interrupted and stated that it would "explain" the law to the jury;
adding: "I'll explain the concept of reasonable doubt, or mention
it at least." 
 The district court acted properly in precluding counsel
from arguing that the jury should equate "reasonable doubt" with "an
abiding conviction to a moral certainty." See Gilday v. Callahan,
59 F.3d 257, 262 (1st Cir. 1995) ("Equating the concept of
reasonable doubt to 'moral certainty' may be, in isolation,
reversible error.").
 F. Notification of Consular Rights
 Ademaj asserts a Fifth Amendment due-process claim, based
on the fact that he was never advised of an alleged right, under
the Vienna Convention on Consular Relations, see 596 U.N.T.S. 261
("Convention"), to request assistance from the local Albanian
consulate in his criminal defense. As this claim is raised for
the first time on appeal, we review only for "plain error"; that is,
an error which was "clear" or "obvious" and affected "substantial
rights." United States v. Olivier-Diaz, 13 F.3d 1, 5 (1st Cir.
1993).
 An unpreserved error is "plain" only if it undermines the
fundamental fairness or basic integrity of the trial court
proceedings. See, e.g., United States v. Taylor, 54 F.3d 967, 973
(1st Cir. 1995). Furthermore, "[e]ven when faced with an
apparently plain error, an appellate court 'has authority to order
correction, but is not required to do so.'" Id. (quoting United
States v. Olano, 507 U.S. 725, 732 (1993)). There has been no
showing that the error belatedly asserted on appeal in this case
was other than "harmless."
 Ademaj neither indicates how the Albanian Consul could
have afforded assistance in his defense, nor that any material due-
process right was infringed by the failure to notify the Consul. 
See Breard v. Greene, 118 S.Ct. 1352, 1355 (1998) ("Even were
Breard's Vienna Convention claim properly raised and proven, it is
extremely doubtful that the violation should result in the
overturning of a final judgment of conviction without some showing
that the violation had an effect on the trial.") (citing Arizona v.
Fulminante, 499 U.S. 279 (1991)).
 Although Ademaj cites Breard v. Pruett, 134 F.3d 615 (4th
Cir.), cert. denied sub nom., Breard v. Greene, 118 S.Ct. 1352
(1998), and Faulder v. Johnson, 81 F.3d 515 (5th Cir. 1996), as
support for the claim that the Vienna Convention guarantees foreign
nationals the right to set aside a criminal conviction absent
compliance with its notification provisions, neither case meets its
billing. In Pruett, the Fourth Circuit bypassed the merits and
denied habeas relief because the consular claim had never been
raised in the state court. 134 F.3d at 619. In Faulder, the Fifth
Circuit determined that a violation of the Convention was harmless
error. 81 F.3d at 520. Thus, neither court considered the merits
or the remedy for a consular claim violation.
 Finally, the Vienna Convention itself prescribes no
judicial remedy or other recourse for its violation, let alone
vacatur of a conviction. Cf. Breard, 118 S.Ct. 1356 (denying stay
of execution based on violation of consular notification
provisions, and stating that "neither the text nor the history of
the Vienna Convention clearly provides a foreign nation a private
right of action in United States' courts to set aside a criminal
conviction and sentence for violation of consular notification
provisions."). Accordingly, we conclude that the failure to
accord Ademaj an alleged right of notification pursuant to the
Vienna Convention did not constitute plain error.
 III
 CONCLUSION
 For the foregoing reasons, we decline to entertain the
ineffective-assistance-of-counsel claim on direct appeal, without
prejudice to its assertion in a collateral proceeding. 
Accordingly, the district court judgment is affirmed.
 SO ORDERED.