**STATE**

v.

**Matthew THOMAS et al.**

**No. 2007–264–M.P.**

Supreme Court of Rhode Island.

Dec. 21, 2007.

Marc DeSisto, Esq., Providence, for Governor Carcieri.

Pamela E. Chin, Esq., for the State of R.I.

William P. Devereaux, Esq., for Matthew Thomas et al.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

In this highly publicized case involving the Rhode Island State Police's execution of a search warrant at a smoke shop [1] operated by the Narragansett Indian Tribe over four years ago, six tribe members, who face criminal misdemeanor charges, seek to elicit testimony at trial from Governor Donald L. Carcieri (the Governor). The Governor, contending that he is protected from having to testify, petitioned this Court for a writ of certiorari after the Superior Court issued an order in which it declined to quash a subpoena that had been issued to him. In light of the very important issue presented and the need to proceed with the already delayed trial, we granted that petition, and, for the reasons set forth in this opinion, we quash the order of the Superior Court.

## I

### Facts and Travel

On July 14, 2003, the Rhode Island State Police executed a search warrant at a smoke shop operated by the Narragansett Indian Tribe. The warrant was issued after a District Court judge found that there was probable cause for concluding that the shop was selling unstamped and untaxed cigarettes, in violation of state law. When the troopers approached the shop to execute the warrant, there was a scuffle, which soon escalated into a more violent confrontation allegedly led by defendants Matthew Thomas, Hiawatha Brown, Bella Noka, Thawn Harris, John Brown, Randy Noka, and Adam Jennings (collectively defendants). After the incident, Thomas and Hiawatha Brown were arrested and charged with misdemeanor counts of resisting arrest, disorderly conduct, and simple assault. Bella Noka was charged with disorderly conduct, simple assault, and obstructing a police officer. Harris was charged with resisting arrest and simple assault. John Brown, Randy Noka, and Jennings were charged with disorderly conduct and resisting arrest.

The Superior Court consolidated these seven cases for trial. Among the pretrial motions made by the parties was the state's motion in limine to preclude evidence of an alleged instruction by the Governor to Colonel Steven M. Pare, then superintendent of the state police, during the days leading up to the raid. The trial justice denied that motion, concluding that the purported instruction "may be relevant to some of the charges and defenses in this case."

Meanwhile, defendants [2] subpoenaed the Governor, seeking to compel his appearance and testimony at defendants' trial. The defendants hoped to elicit testimony from the Governor establishing that he had ordered Col. Pare to have the troopers

1. The smoke shop sold tobacco products to members of the Narragansett Indian Tribe and the general public.

2. Thawn Harris is also a defendant in the underlying case. However, he did not subpoena the Governor and, therefore, is not a party to these appellate proceedings.

withdraw from the execution of the search warrant if they encountered resistance. The Governor, by his counsel, filed a motion to quash the subpoena on the grounds that the testimony sought was protected by the executive testimonial privilege. After a hearing on the Governor's motion, the trial justice issued a bench decision denying the motion to quash.

After the trial justice's ruling, the Governor appealed to this Court and, alternatively, petitioned this Court for a writ of certiorari. The Governor also moved to expedite our review of the matter. On September 6, 2007, this Court granted the Governor's petition for a writ of certiorari, as well as his motion to expedite. We also directed the Attorney General to file a brief setting forth the state's position on the issues raised in this case. Additionally, an order staying the Superior Court trial was entered.

## II

### Analysis

In his brief to this Court, the Governor argues that on this issue of first impression, we should adopt an executive testimonial privilege, which would allow him to choose not to testify in the underlying criminal misdemeanor trial. According to the Governor, precedent in other jurisdictions establishes that the chief executive of the state cannot be haled into court unless he or she has personal knowledge of a matter that is highly relevant to the issues before the court and the information cannot be obtained by other means. It is the Governor's position that because none of these elements has been satisfied in this case, he should not be required to testify. The state, in agreement with the Governor, also filed with this Court a brief expounding a similar argument. The defendants, however, argue that an executive testimonial privilege has no proper place in our jurisprudence. Alternatively, they argue that even if such a privilege were to be recognized, the Governor has waived the right to invoke it.

## A

### Standard of Review

▇▇▇ When reviewing a case before this Court on a writ of certiorari, we limit our review to determining whether any errors of law were committed by the trial court. Accordingly, we "scour the record to discern whether any legally competent evidence supports the lower tribunal's decision and whether the decision[-]maker committed any reversible errors of law in the matter under review." *Cullen v. Town Council of Lincoln*, 850 A.2d 900, 903 (R.I. 2004) (quoting *Kent County Water Authority v. State (Department of Health)*, 723 A.2d 1132, 1134 (R.I.1999)).

▇▇▇ Moreover, it is well settled that the determination of whether evidence is relevant is vested in the sound discretion of the trial justice. *State v. Silvia*, 898 A.2d 707, 716 (R.I.2006). This Court will not disturb such a determination on appeal absent an abuse of discretion. *Id.* When reviewing a trial justice's ruling under the abuse of discretion standard of review, this Court "examine[s] the ruling to ensure that the trial justice's discretion 'has been soundly and judicially exercised, * * * with just regard to what is right and equitable under the circumstances and the law.'" *Selwyn v. Ward*, 879 A.2d 882, 887 (R.I.2005) (quoting *Geloso v. Kenny*, 812 A.2d 814, 817 (R.I.2002)). If there are no grounds to support the trial justice's decision, we will hold that the trial justice abused his or her discretion. *See State v. Carvalho*, 892 A.2d 140, 148 (R.I.2006) (citing *State v. Grayhurst*, 852 A.2d 491, 505 (R.I.2004)).

## B

### Relevancy

The Governor urges this Court to recognize an executive testimonial privilege, which would excuse him from testifying in this criminal misdemeanor trial. We need not address that question, however, because, at an even more fundamental level, we are unable to fathom how the Governor's testimony, even if compelled, would be relevant to the theory of the defense that the state police used excessive force.

The defendants argue that the Governor's instruction to Col. Pare is relevant on the issue of whether the troopers employed the use of excessive force, which they contend is a defense to the disorderly conduct and simple assault charges against them.

Rule 402 of the Rhode Island Rules of Evidence makes explicit that "[e]vidence which is not relevant is not admissible." Correspondingly, Rule 401 of the Rhode Island Rules of Evidence elaborates that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Inherent in Rule 401 are two basic facets of relevant evidence-materiality and probativeness. 1 *McCormick on Evidence*, § 184 at 729 (Kenneth S. Brown, 6th ed.2006). Thus, "[i]f the evidence is offered to help prove a proposition that is not a matter in issue, the evidence is immaterial." *Id.* Accordingly, such immaterial evidence should be excluded. *Id.* Rule 403 of the Rhode Island Rules of Evidence buttresses this standard by further providing that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See *State v. O'Brien*, 774 A.2d 89, 107 (R.I. 2001).

■ Turning to the facts of this case, defendants contend that the issue of relevancy is not properly before this Court because the Governor did not challenge the trial justice's ruling on the state's motion *in limine*. We disagree. Because there was no appeal from the trial justice's ruling denying the state's motion *in limine*, the Governor petitioned this Court to review the trial justice's denial of his motion to quash the subpoena that was served upon him. It is inherent in the trial justice's ruling on that motion that she found the testimony to be relevant. Indeed, one day before this decision, the trial justice denied the state's motion *in limine* to exclude evidence of the Governor's alleged instruction to the Rhode Island State Police and referred to this earlier ruling when delivering her bench decision on the Governor's motion to quash the subpoena that had been served on him. The ruling that the Governor petitioned this Court to review clearly indicates that the trial justice found the evidence to be relevant, even outside the framework of an analysis on whether an executive testimonial privilege could be invoked. The trial justice more explicitly stated:

> "I would note in making the determination that the defendants have a right to compel the Governor to testify, the Court is stressing the testimony will be limited to that deemed relevant to this case, which is the contents of any instructions given by the Governor regarding the search warrant."

■ Although we are satisfied that the issue of relevancy is, in fact, properly before this Court, we also recognize that "a court may, although rarely will, forgive a

knowing waiver where extreme injustice would be done." *Broadley v. Mashpee Neck Marina, Inc.*, 471 F.3d 272, 276 (1st Cir.2006) (citing *United States v. La Guardia*, 902 F.2d 1010, 1013 (1st Cir.1990)); *see also Gencarelli v. UPS Capital Business Credit*, 501 F.3d 1 (1st Cir.2007). In this case, the first opportunity that the Governor had to challenge the trial justice's determination that the evidence was relevant was after she ruled on defendants' motion to compel. At the time the state's motion *in limine* was before the court, the Governor had not yet been subpoenaed nor had he been ordered to appear.

■ Given the deference that this Court affords to rulings of trial justices, we do not easily dispense with this respected trial justice's analysis. As one local commentator noted with respect to an appellate court's review of a trial justice's ruling on relevancy, "[r]eversals are rare, but do occur." Eric D. Green and Robert G. Flanders, Jr., *Rhode Island Evidence Manual*, Rule 402, § 402.02 advisory committee's note (2005). We adhere strictly to the rule that "an appellate court must be shown that [the trial court's] discretion was clearly abused before reversal is warranted." *State v. Gelinas*, 417 A.2d 1381, 1386 (R.I.1980). Although this is a stringent test, our jurisprudence illustrates that it does not insulate every ruling made by a trial justice. *See, e.g., State v. Dennis*, 893 A.2d 250, 266 (R.I.2006) (trial justice abused his discretion by excluding evidence of a previous false claim of rape); *Sweet v. Pace Membership Warehouse, Inc.*, 795 A.2d 524, 528 (R.I.2002) (it was an abuse of discretion for a trial justice to exclude evidence illustrating a plaintiff's physical activities after the accident that gave rise to the litigation).

■ Nevertheless, in this case, we cannot perceive of any ground to support the trial justice's ruling. We can conceive of absolutely no situation in which the testimony that defendants seek to elicit from the Governor would be relevant to the theory of the defense that the state police used excessive force. Such testimony would not prove any matter in issue. *See* R.I. R. Evid. 401. Therefore, we cannot conclude that the trial justice's judgment was "'soundly and judicially exercised, * * * with just regard to what is right and equitable under the circumstances and the law.'" *Selwyn*, 879 A.2d at 887 (quoting *Geloso*, 812 A.2d at 817).

In this case, a District Court judge, as a member of the Judiciary of this state, issued a search warrant, which provided the only instruction that was legally binding on the troopers. The warrant commanded an officer, authorized by law to execute the warrant, "diligently to search the place or person [described in the warrant] for the property specified and to bring such property or articles, and to summon the owner, or keeper thereof, if any be named in the complaint." *See also* Super. R.Crim. P. 41 (providing that a search warrant "*shall command* the officer to search forthwith the person or place named for the property specified." (Emphasis added.)). The discussions that the Governor purportedly had with Col. Pare occurred days before the warrant was issued. The search warrant, a court order, therefore, supersedes any instructions the Governor may have given concerning the execution of the search warrant. In any event, we are hard-pressed to find any case law from this jurisdiction that indicates how a Governor rightfully could interfere with a court order. There is no question that the troopers were bound by the warrant's command, regardless of whether the Governor or Col. Pare previously had communicated any specific instruction to the

troopers about how it should be executed.[3] Therefore, in accordance with this command, the state troopers executed the warrant and used their own judgment about the amount of force necessary to carry out the warrant's command. The testimony defendants seek to elicit from the Governor would have absolutely no impact on the trier of fact's evaluation of the reasonableness of this judgment call.

 Furthermore, the Fourth Amendment to the United States Constitution protects against unreasonable seizures of persons and, correspondingly, forms the basis for a defendant's allegation that an arrest was made by excessive police force. *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The United States Supreme Court has held that all allegations that law enforcement officers have used excessive force to effectuate an arrest are subject to the Fourth Amendment's "reasonableness" standard. *Id.* at 395, 109 S.Ct. 1865.

 Whether the force an officer used to make an arrest was reasonable should be evaluated "from the perspective of a reasonable officer on the scene." *Id.* at 396, 109 S.Ct. 1865. The United States Supreme Court has explained that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865. Interpreting the principle set forth by the United States Supreme Court in *Graham*, the Fourth Circuit has explained that "*Graham* requires us to focus on the moment force was used; `conduct

prior to that moment is not relevant in determining whether an officer used reasonable force." *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir.1999). Thus, the reasonableness of an officer's actions is judged by an objective standard. *Graham*, 490 U.S. at 397, 109 S.Ct. 1865. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*

In light of these well-established principles, it is clear that the Governor's instructions to Col. Pare are irrelevant as a matter of law to the key issue of whether the officers used excessive force. Neither the Governor nor Col. Pare was at the smoke shop the day of the incident, and therefore neither of them was in a position where they could decide whether force was necessary in light of the circumstances. Even if the Governor ordered the troopers to withdraw if they faced resistance, the fact that they might not have complied with such an instruction does not have any bearing on the question of the officers' reasonableness. Allowing the introduction of such evidence would do nothing more than confuse the jury, and this Court has recognized that avoidance of such confusion can be a permissible reason for excluding evidence. *See, e.g., State v. Snell*, 892 A.2d 108, 122 (R.I.2006). In this case counsel for the defendants raised the issue of whether the troopers employed excessive force, thereby justifying the defendants' use of force in self-defense. The inquiry in this case, therefore, should focus on whether the state troopers actually used force that exceeded the bounds of reasonableness under the Fourth Amendment and

---

**3.** Even if the Governor had communicated an instruction to Colonel Steven M. Pare about how the search warrant should be executed, it is questionable whether that instruction was

ever communicated to any of the state troopers who executed the search warrant at the smoke shop on July 14, 2003.

not on any purported orders by their superiors. The Governor's personal intent, which he purportedly expressed well before the troopers met resistance, has no bearing on this analysis.

## Conclusion

For the foregoing reasons, the Governor's petition for certiorari is granted. The order of the Superior Court is quashed. The case is remanded to the Superior Court.