**STATE**

v.

**Rosalia LOPEZ–NAVOR.**

No. 2005–272–C.A.

Supreme Court of Rhode Island.

July 10, 2008.

Lauren Zurier, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on May 13, 2008, on appeal by the defendant, Rosalia Lopez–Navor (Lopez–Navor or defendant), from a judgment of conviction entered in the Family Court upon a jury verdict of criminal neglect of a child, in violation of G.L.1956 § 11–9–5. For the reasons set forth in this opinion, we affirm the judgment of the Family Court.

### Facts and Travel

This appeal is part of a trio of cases arising from horrific abuse that was inflicted upon Lopez–Navor's child, Alexis L. (Alexis),[1] at the hands of his father, Raul

---

1. In the record on appeal, the child is referred to as Alexis as well as Yahir Alejandro.

DeRosas (Raul). In January 2001, Raul left a pregnant Lopez–Navor in Mexico and illegally entered the United States. Soon thereafter, on August 17, 2001, Lopez–Navor gave birth to Alexis; she came to the United States in 2003, also illegally, to reunite with Raul in hopes of achieving her dream of having a family—a dream that Raul encouraged during their many telephone conversations.

The reunion between defendant and Raul soon resulted in a second pregnancy, and on October 29, 2003, a pregnant Lopez–Navor was hospitalized with an infection at Women and Infant's Hospital. When Raul brought Alexis to the hospital to visit his mother, a certified nurse's assistant noticed bruises on the child's face and alerted a staff social worker. When confronted, Raul gave the usual explanation—that the child had suffered the ubiquitous fall. However, an examination at Hasbro Children's Hospital proved otherwise. Alexis had severe bruises, lacerations, and bite marks throughout his body, including on his penis and buttocks; injuries that an examining physician deemed to be consistent with child abuse. As a result, Alexis was placed in the custody of the Department of Children, Youth and Families. After a police investigation and Raul's admission to the Providence police that he had struck the child, he was arrested.

The defendant, on the other hand, was less than truthful about the abuse and attempted to protect Raul; she originally stated that she saw Raul spank Alexis on a single occasion. In February 2004, Lopez–Navor was scheduled to have a dental impression made for a comparison with the bite marks on her son. While at the dentist's office, defendant began crying and agreed to provide another statement to police. In this statement, she admitted

We shall refer to him as Alexis.

that Raul habitually abused Alexis by hitting him, biting him, and restraining him at their basement apartment in Providence.

Lopez–Navor explained to police that when she tried to intervene, Raul ordered her to stay away and said that he would abuse her son even more if she did not. The defendant stated that she failed to tell the truth at first because she was afraid that Raul would be released from custody and continue to harm her son.

On April 14, 2004, a criminal information was filed charging Lopez–Navor with one count of criminal neglect of a child, in violation of § 11–9–5. A jury trial commenced in the Family Court on March 7, 2005. The defendant testified that she was afraid to report Raul's violent behavior because he threatened and intimidated her and told her that if she tried to seek help she would be deported to Mexico and lose her son. Additionally, defendant explained that her inability to speak English prevented her from finding help.

The jury returned a guilty verdict on March 16, 2005. The trial justice denied defendant's motion for a new trial; he sentenced her to eighteen months probation and ordered counseling. The defendant filed a timely appeal to this Court. She since has been deported.

### Standard of Review

When reviewing a judgment of the Family Court, "it is not [this Court's] function to arrive at de novo findings and conclusions of fact based on the evidence presented at trial." *Moran v. Moran*, 612 A.2d 26, 33–34 (R.I.1992) (quoting *Casey v. Casey*, 494 A.2d 80, 82 (R.I.1985)). However, when confronted with questions of law on appeal, this Court undertakes a *de*

*novo* review. *State v. Jennings,* 944 A.2d 171, 173 (R.I.2008).

### Analysis

On appeal, Lopez–Navor contends that her involuntary deportation to Mexico does not render this appeal moot[2] and that the trial justice erred when he: (1) rejected defense counsel's request to instruct the jury on the defense of duress; (2) did not allow into evidence Raul's confession to the Providence police; and (3) permitted an uncertified Spanish interpreter to participate in the proceedings.

### A

### Defense of Duress

■■■ The defendant contends that the trial justice erred when he refused to instruct the jury on the defense of duress. Because we are satisfied that this defense has no place in this case, we reject defendant's argument. "A duress defense has three elements: 1) an immediate threat of serious bodily injury or death, 2) a well-grounded belief that the threat will be carried out, and 3) no reasonable opportunity to escape or otherwise to frustrate the threat." *State v. Verrecchia,* 766 A.2d 377, 389 (R.I.2001) (quoting *United States v. Arthurs,* 73 F.3d 444, 448 (1st Cir.1996)). A party's failure to establish one of these elements is sufficient to justify denying a request to instruct the jury on this defense theory. *Id.* (citing *Arthurs,* 73 F.3d at 448–49).

■■ Here, defendant was not entitled to this instruction as a matter of law and may not rely on the defense of duress to avoid the consequences of her criminal neglect of Alexis. There is no evidence that defendant was unable to escape from Raul or

reach out for help—her self-serving excuses notwithstanding. The evidence disclosed that Raul had abused the child for many weeks and that, during that time, defendant was alone on occasion with her son in their apartment or in a public place. She never told anyone that she was in trouble or that Raul was abusing Alexis. Indeed, when she was admitted to the hospital, defendant asked to keep the child with her, but she never explained to anyone why she wished to do so.

By failing to report Alexis's dire situation to anyone, whether a store clerk or a nurse in the hospital, Lopez–Navor failed to protect her child from his father's abuse. *See United States v. Bakhtiari,* 913 F.2d 1053, 1058 (2nd Cir.1990) (quoting *United States v. Alicea,* 837 F.2d 103, 106 (2nd Cir.1988) ("[W]here there is reasonable opportunity to escape the threatened harm, the defendant must take reasonable steps to avail himself [or herself] of that opportunity, whether by flight or by seeking the intervention of the appropriate authorities."); *see also In re Chester J.,* 754 A.2d 772, 778 (R.I.2000) and *In re Nicole B.,* 703 A.2d 612, 617–18 (R.I.1997) (holding that parents are held to a greater level of responsibility and awareness for their children than other adults and that parents who ignore abuse are as culpable as the actors, in the context of the termination of parental rights).

■■ Finally, the fact that defendant may have feared contacting the police because of her status as an illegal alien is no defense—she is not relieved of her duty to protect her child and seek help despite any personal consequences. Neither her fear of Raul nor the threat of deportation excused her conduct, and an instruction on

---

**2.** Because the state stipulated at oral argument that the issues in this case are not moot, we need not address the issue.

the defense of duress was not warranted by the evidence.

## B

## Exclusion of Evidence

■ The defendant's contention that the trial justice erred in refusing to allow into evidence Raul's statement to the police, in which he admitted that he abused his son, is also unavailing. The trial justice excluded the statement on hearsay grounds, and found that it was outside the reach of the hearsay exceptions counsel raised—Rules 803 and 804 of the Rhode Island Rules of Evidence. Specifically, the trial justice concluded that Raul's statement "on its face appears as hearsay" and that allowing it under a hearsay exception would "be unduly prejudic[ial]" to the state.

■ Because we conclude that the witness statement was irrelevant to the guilt or innocence of defendant, we need not address these evidentiary contentions. Relevant evidence is evidence that has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." R.I. R. Evid. 401. Although evidence may assist in proving a certain proposition, unless it relates to a matter in issue in the case, it is immaterial and inadmissible. *State v. Thomas,* 936 A.2d 1278, 1282 (R.I.2007). Additionally, evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* (quoting R.I. R. Evid. 403). We have declared that "the ultimate determination of the effect of the evidence is within the trial justice's discretion[.]" *State v. O'Brien,* 774 A.2d 89, 107 (R.I.2001)

(quoting *State v. Grundy,* 582 A.2d 1166, 1172 (R.I.1990)).

The record in this case is barren of any suggestion that Lopez–Navor abused her child. Thus, defendant's contention that Raul's statement would eliminate any "speculation that [Lopez–Navor] also had abused" Alexis, is misdirected; that statement is not relevant to any issue in dispute. In this case, there was no dispute about who the abuser was and who the enabler was. The defendant was convicted of failure to protect her son from his father's brutality. Because the record reflects that Raul, and not defendant, committed the abuse in this case, the statement properly was excluded.

## C

## Court–Appointed Interpreter

■ Finally, the trial justice's decision to allow an interpreter who was not certified was not error. Before trial, defense counsel objected to the qualification of the court interpreter and questioned the certification procedure for court-employed interpreters. The trial justice permitted *voir dire* examination of the interpreter's qualifications and defendant failed to impeach the interpreter's qualifications. Significantly, defendant has failed to show that she was prejudiced by the interpreter services that were provided to her.

Court interpreters are provided pursuant to G.L.1956 chapter 19 of title 8. This statute was enacted:

> "[T]o guarantee the rights of persons who, because of non-English speaking background, are unable to readily understand or communicate in the English language, and who consequently need the assistance of an interpreter [to] be fully protected in legal proceedings in criminal matters * * *." Section 8–19–1.

This statute furthers the state's goal of providing meaningful access to criminal legal proceedings for all people who come before the courts; it does not provide a basis for a finding of reversible error absent a showing of actual, irremediable prejudice.

 Although the United States Supreme Court has not recognized a constitutional right to a court-appointed interpreter, this Court has held "that a trial justice is entrusted with the discretion to appoint an interpreter if he or she determines that a defendant is unable to understand the English language adequately * * *." *State v. Ibrahim*, 862 A.2d 787, 797, 798 (R.I.2004). We have long held that a trial justice is granted "large discretion" in the "selection, appointment, and retention of an interpreter." *State v. Deslovers*, 40 R.I. 89, 115, 100 A. 64, 73 (1917).

Unless the complaining party provides clear evidence of prejudice, we will not disturb the trial justice's discretion. *Id.* Because the defendant has failed to show that she was prejudiced in any cognizable way by the interpreter that the court provided for her, we reject this argument.

## Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Family Court. The papers in this case are remanded to the Family Court.