**Ralph SWEET**

v.

**PACE MEMBERSHIP WAREHOUSE, INC.**

No. 2000–94–Appeal.

Supreme Court of Rhode Island.

May 2, 2002.

---

Kevin A. McKenna, Providence, for plaintiff.

Stephen B. Lang, David Edward Maglio, III, Providence, for defendant.

Present: LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

# OPINION

LEDERBERG, J.

The defendant, Pace Membership Warehouse, Inc. (Pace),[1] has appealed the denial of its motion for a new trial, or alternatively, for remittitur, in this personal injury case in which a total judgment in excess of $300,000 was awarded to the plaintiff, Ralph Sweet (Sweet). On appeal, Pace argued that the trial justice erred by excluding certain evidence of Sweet's activities following the period of time for which he claimed damages, and also erred by denying Pace's motion for partial judgment as a matter of law on the issue of Sweet's claim for lost income. In addition, Pace maintained that statements by Sweet's counsel during closing arguments were inflammatory and constituted clear, reversible error. After review of the record and the evidence, we sustain the appeal.

## Facts and Procedural History

Ralph Sweet, a contractor,[2] went to Pace Membership Warehouse, Inc., on October 11, 1991, to purchase plastic bags and a broom to clean up the site of a remodeling job he had completed. While there, he was hit by a forklift, and he was hospitalized for a week following the accident. Upon his release, he received ongoing medical treatment and physical therapy for various conditions, including back pain, erectile dysfunction, numbness in his left hand and arm, and a feeling of "pins and needles" in his right leg. In October 1994, Sweet brought suit against multiple defendants, including Pace. Pace conceded liability, and the case proceeded to trial solely on the issue of damages.

At trial, Sweet sought $370,000 in damages for pain and suffering, lost income, and medical expenses, for the period from October 11, 1991, to November 25, 1997. A jury awarded Sweet $162,787.50 in damages, plus interest, for a total judgment of more than $300,000. After the trial justice denied Pace's renewed motion for judgment as a matter of law with respect to Sweet's lost-income claim and also denied its motion for a new trial, or alternatively, for remittitur, Pace appealed. After the trial justice granted Pace's request for a stay pending appeal, he ordered Pace to post a *supersedeas* bond in the amount of $400,000, which Kmart posted on behalf of Pace.[3] Additional facts will be added as

---

1. The case was originally captioned *Ralph Sweet v. Crellin Technologies, Inc., a/k/a Crellin Handling Equipment, Inc. and Crown Equipment Corporation d/b/a Crown Lift Trucks, Walmart Stores, Inc. d/b/a Sam's, K Mart, Inc., Pace Membership Warehouse, Inc.* Before trial, Sweet agreed to dismiss the case against the defendants Crellin Technologies, Inc., and Crown Equipment Corporation. He also stipulated that the case against the defendant Kmart would be dismissed, based on Kmart's agreement to pay any judgment entered against Pace. According to the parties, Kmart had owned the stock of the defendant Pace until Wal–Mart purchased the assets of Pace, which had ceased business operations by the time of trial.

2. Although Sweet described himself as a contractor at trial, he identified himself as a "handyman" on Schedule C of his tax returns for 1991 and 1992, which were produced during discovery conducted by former defendant Crellin Handling Equipment, Inc.

3. Kmart filed for bankruptcy on January 22, 2002, and subsequently filed a motion to pass the case in this Court, arguing that this appeal was subject to the automatic-stay provisions of 11 U.S.C. § 362(a). Because the Kmart bond was not the subject of the instant appeal, this Court denied the motion.

necessary in discussing the issues on appeal.

### Exclusion of Evidence

 In general, a trial justice's decision on whether evidence is relevant and admissible will not be disturbed on appeal, absent a clear abuse of the trial justice's discretion in deciding whether to admit the evidence. *Skaling v. Aetna Insurance Co.*, 742 A.2d 282, 288 (R.I.1999); *DiPetrillo v. Dow Chemical Co.*, 729 A.2d 677, 691 (R.I. 1999); *see also* R.I.R.Evid. 402, 403. "[This] abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Votolato v. Merandi*, 747 A.2d 455, 460 (R.I.2000) (quoting *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 2048, 135 L.Ed.2d 392, 414 (1996)).

 In this case, the proffered evidence included three videotapes: a family video of Sweet driving an all-terrain vehicle on apparently bumpy roads through a national forest in Arizona, a videotaped deposition of Sweet's stepdaughter, Pamela Cortez, and a separate videotaped deposition of her husband, Paul Cortez. The Cortezes' videos disclosed that Sweet hiked, rode all-terrain vehicles, and went snowmobiling and rollerblading with them on several occasions, all subsequent to November 25, 1997. Shortly before trial, Sweet moved to strike the Cortez depositions on the grounds that he did not receive adequate notice thereof and could not conduct adequate cross-examination during the depositions. The trial justice ruled that the depositions would be admitted "subject to [Sweet's] right to object to any portions of those depositions as relates to relevance, or other rules of evidence."

Thereafter, Sweet made the decision to limit his damages claim to the period from October 11, 1991, to November 25, 1997. As a result, the trial justice excluded all evidence regarding Sweet's activities after November 25, 1997, including the proffered videotapes, on the ground that the evidence was not relevant to Sweet's time-limited damages claim. Pace had argued that the evidence was proper for impeachment, but the trial justice ruled that although impeachment on credibility grounds was "perfectly permissible" under Rules 607 and 608 of the Rhode Island Rules of Evidence, the evidence in question would "get into specific instances of Mr. Sweet's character, which is prohibited under [Rule] 608(b)." The trial justice also determined that such evidence would be unduly prejudicial to Sweet under Rule 403, and it might "open the door" to unrelated extrinsic evidence.[4] Accordingly, the trial justice ruled:

> "[F]or all of those reasons, the Court will not allow an examination on those documents or on what activities Mr. Sweet may or may not have conducted subsequent to November 25, 1997."

We are of the opinion that the trial justice's exclusion of all evidence concerning Sweet's activities after November 25, 1997, constituted an abuse of discretion.

Rule 401 of the Rhode Island Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it

---

**4.** Sweet had argued to the trial court that if the depositions of Paul and Pamela Cortez were admitted, he should be permitted to introduce evidence of a family dispute that he claimed was the source of the Cortezes' bias against him and testimony of Sweet's wife concerning conversations she had had with one of Pace's attorneys. This in turn raised the prospect that the attorney could be called as a rebuttal witness, in which case, Sweet argued, Pace's counsel should be disqualified.

would be without the evidence." Here, although Sweet limited his claim for damages to the period from October 11, 1991, to November 25, 1997, the issue of the nature and extent of Sweet's injuries during that time period was vigorously disputed. In particular, Pace disputed Sweet's allegation that the accident caused him "severe and permanent injury." Evidence tending to show that Sweet had fully recovered from his injuries at some point after November 25, 1997, undisputedly would render it "less probable"—within the meaning of Rule 401—that Sweet suffered from "severe and permanent injury" during the period for which he claimed damages. Therefore, the trial justice erred in concluding that all evidence of post-period activities was irrelevant to Sweet's claim.

▆▆▆ Moreover, although Sweet's testimony primarily addressed the time frame for which he requested damages, he also indicated several times that he was still disabled as of the time of his trial testimony. Specifically, Sweet stated on direct examination that he was "still" unable to rake, shovel, bend, lift and hang clothes on the line, that he had problems sitting, that "most of the time" he wore a waistband to support his back, that he slept with a special device under his legs to help his back, that he had been on prescription pain pills "ever since" the accident, that he still had not been able to have sexual intercourse with his wife, and that he was unable to walk more than 1,500 or 2,000 feet at a time.[5] In addition, in his answers—which were never amended—to Pace's interrogatories, Sweet stated that he "still" suffered from back and neck pain and erectile dysfunction and that he had been "totally disabled * * * since the date of the accident," thereby rendering him unable to work as a contractor. Hence, the proffered videotaped evidence that Sweet had engaged in strenuous physical activity, even if it occurred after November 25, 1997, directly contradicted Sweet's pleadings, his answers to interrogatories, and his testimony on direct examination that he continued to suffer from the effects of the accident and that his injuries were permanent. The evidence from the videotapes therefore was relevant for impeaching Sweet on cross-examination, and consequently the trial justice erred in concluding that activities after November 25, 1997, were irrelevant to Sweet's claimed damages.[6] The fact that Sweet dropped

---

5. Sweet also testified on direct examination that he was still unable to "handle" his grandchildren, although that answer subsequently was stricken upon the objection of Sweet's counsel. Furthermore, at trial, Sweet was permitted to testify while standing because he claimed to have "trouble sitting" due to back problems.

6. We also disagree with the trial justice that Rule 608(b) of the Rhode Island Rules of Evidence barred the admission of the videotapes. Rule 608 addresses instances in which evidence of a witness's character may be admitted to attack that witness's credibility. *See also* R.I.R.Evid. 404(a)(3). The rule precludes the admission of extrinsic evidence of specific instances of conduct, except for criminal convictions as provided in R.I.R.Evid. 609, if the evidence is offered on the issue of

general credibility or general propensity for truthfulness or untruthfulness. Rule 608(b); *see also* Advisory Committee's Note to Rule 608(b). In this case, however, the evidence that Sweet had engaged in strenuous physical activities was not offered to show a general character for untruthfulness, but rather to contradict Sweet's specific assertions that he had been permanently disabled by the accident. As the Advisory Committee's Note to Rule 608(b) points out, "[t]his type of impeachment [by specific contradiction] is traditionally permitted and is not precluded by the federal rule or the * * * Rhode Island rule."

Although we conclude that Rule 608(b)'s restriction on character evidence is inapplicable to evidence offered for the purpose of specific contradiction, we note that such evidence is nevertheless subject to the well-set-

his claim for any damages *post* November 25, 1997, did not lessen the relevance of the evidence for impeaching Sweet's credibility or in refreshing his recollection of the activities, nor did it bar the admission of such evidence.

Accordingly, we conclude that a new trial is warranted. On remand, if the videotapes are offered either as direct evidence of Sweet's physical condition or to impeach Sweet on cross-examination, and if Sweet voices an appropriate objection to their admission, the trial justice should review the tapes and evaluate their admissibility under Rule 403.[7] We do not intend on retrial to limit the trial justice's discretion to consider all appropriate factors in conducting this evaluation. For instance, the trial justice may consider whether the requirement of authentication has been met and whether the probative value of the evidence—in relation to the purpose for which it is offered—is substantially outweighed by the danger of unfair prejudice or confounding the issues. The admissibility of any evidence, however, should not be limited by an arbitrary cut-off date on damages.

### Claim For Lost Income

Second, Pace argued that the trial justice should have granted its motion for partial judgment as a matter of law, or alternatively, its motion for a new trial or remittitur, given the speculative nature of Sweet's claim for lost income. Sweet responded that, in the absence of specific jury interrogatories, there was no basis for determining whether the jury awarded lost income, or if it did award lost income, what amount was awarded. As such, Sweet asserted that the trial justice properly refused to alter or amend the verdict. Moreover, Sweet argued, remittitur was not warranted because the verdict was supported by the evidence adduced at trial.

Sweet claimed as lost income the future lost profits from his contracting business. This Court has held that in order to recover future lost profits in an action for breach of contract, a plaintiff must establish the loss with " 'reasonable certainty.' " *UST Corp. v. General Road Trucking Corp.*, 783 A.2d 931, 941 (R.I. 2001). This standard applies as well to cases in which a plaintiff alleges the loss of future profits because of personal injury. *See* 22 Am.Jur.2d *Damages* §§ 635, 1015 (1988). In such cases, however, "profits are allowable only to the extent that they resulted from the use of plaintiff's labor and talents, as opposed to capital or the labor of others." *Id.* at § 1015. Thus, to recover future lost profits in a personal injury action, a plaintiff must meet both the requirements of proximate cause and reasonable certainty. *See id.* at §§ 634, 635, 1015. Although the standard of reasonable certainty does not require mathematical certainty, an estimate of future lost profits may not be based entirely upon speculation and conjecture. *UST Corp.*, 783 A.2d at 942.

---

tled rule that extrinsic evidence may not be used to impeach a witness on a collateral point. *State v. Souza*, 708 A.2d 899, 904 (R.I.1998); *State v. Filuminia*, 668 A.2d 336, 337–38 (R.I.1995); *State v. Bowden*, 439 A.2d 263, 268 (R.I.1982). Rather, with respect to collateral issues, "[t]he cross-examiner is restricted to the answers of the witness." *Bowden*, 439 A.2d at 268. Sweet's alleged permanent disability, however, was hardly a collateral issue.

7. Rule 403 of the Rhode Island Rules of Evidence provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Here, the only evidence presented on the issue of lost income was Sweet's testimony that from 1992 through 1997, he was forced to turn down a number of contracting jobs because of his injuries and that his total net lost income from the time of the accident to November 25, 1997, was "approximately $130,000." On cross-examination, Sweet admitted that he never viewed the plans or sites of any potential jobs that he turned down, and although he had supervised employees in his past work as a general contractor, he admitted that he never attempted to assemble a crew that he could supervise in order to permit him to bid on jobs. At the close of Sweet's case, Pace moved for judgment as a matter of law with respect to Sweet's claim for lost income, arguing that Sweet's estimate of his lost earnings was too speculative to be submitted to the jury. The trial justice denied the motion, stating, "It's a close question, because the jury could find that these damages are highly speculative or weren't proven. But I'm not going to take it from the jury, at least at this time." Pace renewed its motion at the close of evidence, and the trial justice affirmed his denial of the motion. The trial justice also denied Pace's request for a special verdict form on which the jury would have specified whether "[it found] that Ralph Sweet has proven by a fair preponderance of the evidence that [Sweet] sustained lost wages or income for the period of October 11, 1991 through November 25, 1997," and if so, "how much money * * * will fairly and reasonably compensate [him] for his lost wages or income?" Under the circumstances here, where there was no basis for the award of lost income, the denial of the request for the special verdict form and the use of the general verdict form was error.

After careful consideration, we are of the opinion that Sweet's lost-income claim was too speculative to be submitted to the jury. It appears from the record that the only evidence to support Sweet's claim was his own estimate, based on his experience as a contractor, that he would have earned "approximately $130,000." Sweet apparently did not present any evidence of the level of income he actually earned in previous years, nor did he offer expert testimony on what a similarly situated contractor would have earned during the relevant time period.[8] Sweet also failed to present evidence to show what proportion of the estimated lost income was due to his inability to perform manual labor as a result of his injuries, as opposed to income from capital or the labor of others under his supervision. Although it is more difficult for plaintiffs who do not earn a uniform wage or salary to prove lost income, some evidence or proof beyond a plaintiff's own speculation is required. Therefore, we remand the case for a new trial, and we decline to address the remaining issues raised by Pace on appeal.

### Conclusion

In summary, we sustain Pace's appeal, vacate the judgment, and remand the case to the Superior Court for a new trial.

Chief Justice WILLIAMS did not participate.

---

8. Although the record disclosed that some documentation of Sweet's business income for 1991 and 1992 was produced during discovery, *see* note 2 *ante,* there is no evidence that the documents were introduced or discussed at trial.